IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CT-3202-FL

| ORLANDER D. LEGGETT, also known as Orlander Demetrius Leggett, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| GEORGE SOLOMON, JANET BUNDY, JOHN STEEN, and MARY GREEN, | ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for summary judgment (DE 32) pursuant to Federal Rule of Civil Procedure 56. Plaintiff did not respond to the motion. For the reasons that follow, the court grants the motion.

## STATEMENT OF THE CASE

Plaintiff commenced this action by filing complaint on August 11, 2016, alleging claims for violations of his civil rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. Plaintiff alleges defendants George Solomon ("Solomon"), Janet Bundy ("Bundy"), John Steen ("Steen"), and Mary Green ("Green") violated his rights under the First Amendment to the United States Constitution and RLUIPA by requiring that he observe Ramadan and other Islamic holy days on the wrong dates. Plaintiff seeks compensatory damages and injunctive relief.

On September 13, 2017, the court conducted its frivolity review of the complaint and

allowed the action to proceed.  On August 10, 2018, the court entered case management order governing discovery and pretrial dispositive motions practice.  The parties completed discovery on or about December 17, 2018.

On March 1, 2019, defendants filed the instant motion for summary judgment, arguing plaintiff failed to exhaust his administrative remedies as to one of his claims, that the RLUIPA claims are moot, and that the undisputed record evidence demonstrates defendants did not violate plaintiff's rights to freely exercise his religion.  In support, defendants rely upon a memorandum of law, statement of material facts, and the following: 1) affidavit from defendant Bundy; 2) May 1, 2016, memorandum from defendant Solomon ("Solomon Memorandum"); 3) May 15, 2016, memorandum from defendant Bundy ("Bundy Memorandum"); 4) plaintiff's grievance records; and 5) records showing plaintiff's release from custody.

On March 4, 2019, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court provided plaintiff notice of his right to respond to the instant motion.  Plaintiff, however, failed to file response.  On April 5, 2019, the court entered order directing plaintiff to show cause why this action should not be dismissed for failure to prosecute.  Plaintiff responded to the show cause order, but did not file substantive response to defendants' motion for summary judgment.

## STATEMENT OF THE FACTS

In 2016, plaintiff was serving state term of imprisonment at the Carteret Correctional Institution ("Carteret C.I.").  (Bundy Aff. (DE 35-4) ¶¶ 5-7).  Defendant Bundy is the correctional superintendent at the Carteret C.I.  (Id. ¶ 3).  In May 2016, defendant Bundy received memorandum from defendant Solomon, the former North Carolina Department of Public Safety ("DPS") Director

of Prisons. (Id. ¶ 7; Solomon Memorandum (DE 35-4) at 6).[1] The Solomon memorandum outlined DPS procedures for Muslim inmate observance of the 2016 Islamic holy month of Ramadan, Night of Power, and Eid al Fitr, and included the officials start and end dates for Ramadan recognized by DPS. (Bundy Aff. (DE 35-4) ¶ 7; Solomon Memorandum (DE 35-4) at 6). Defendants Bundy and Green, a DPS program supervisor, then prepared a memorandum for distribution to the Carteret C.I. inmate population outlining the procedures that would be in place for Ramadan. (Id. ¶ 8; Bundy Memorandum (DE 35-4) at 14).

Plaintiff's verified complaint alleges defendants did not permit him to properly observe Ramadan, the Night of Power, or Eid al Fitr. Specifically, plaintiff alleges the following:

> A memorandum was posted "claiming" to be a [Department of Public Safety] memorandum, it was signed by [defendant] Bundy. This memorandum was full of incorrect dates concerning the Muslim month of Ramadan.
> . . .
>
> I contacted [defendant] Steen [and] the programmer over all religious services, [defendant] Green to show them the correct dates on an Islamic Calender. Neither [defendant Steen or defendant Green] investigated nor did any research on the matter. Everyone I consulted said the memo stands and their hands were basically tied. I spoke with Sergeant Michael Goddette several times but he could not overrule anything set in motion.
>
> On June 6, 2016, at sundown we were to start the month of Ramadan, according to the [Department of Public Safety] memorandum mentioned earlier. Ramadan actually started the prior evening. [June 6] was supposed to be our first day of fasting. So, on my first day of fasting I was given no pre-dawn meal, my first meal came that evening.
>
> Due to the incorrect starting date, all of our other important dates were affected. The memorandum stated our "Laylul Qadr" or Night of Power was to occur on Friday, [July 1, 2016]. But the actual Night of Power was to fall on any of the odd nights of the last ten days of Ramadan. That is based on the Islamic calendar, so [in 2016] that

---

[1] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

should have been either: June 26, 28, 30, July 2, or 4.

According to the memorandum, our fast was to end on [July 4, 2016,] but the month of Ramadan actually ended on [July 5, 2016,] so we were forced to break our fast early or if we could afford it provide our own meals at the correct times. My money issues would not allow me to continue the last day.

According to the memorandum there was supposed to be another memorandum posted about our "Eid al Fitr" or celebration feast. It was supposedly being held on either July 5, 6, or 7. As of [July 5, 2016], no such memorandum was posted. On [July 6, 2016,] word of mouth spread through the Islamic community that we were to have our feast on that same day. At 9:50 a.m, I was told about the meeting we were supposed to have at 10:00 a.m. for prayer. I could not attend due to the lack of time for performing ablution, the cleansing of the body before prayer.

On [July 6, 2016,] at 11:45 a.m. I spoke with [sergeant] Long. I was told by him to report to the chapel at 12:00 p.m. or after count for our feast or special meal as the memorandum referred to it. That special meal consisted of everything on the regular tray but in smaller portions due to being in styrofoam trays. We had tuna fish with onions (which I don't eat) and two vegetables, the only difference was the cake which was provided. No substitute for the tuna salad was offered.

(Compl. (DE 1) § IV). Plaintiff was released from custody on September 11, 2016. (Bundy Aff. (DE 35-4) ¶ 10).

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

   1.  Exhaustion of Administrative Remedies – Eid al Fitr Claim

Defendants argue plaintiff failed to exhaust his administrative remedies with respect to his claim alleging defendants failed to provide a proper Eid al Fitr feast.[2] The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016); Woodford v. Ngo, 548 U.S. 81, 83-85 (2006). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008).

DPS has a three-step administrative remedy procedure, which inmates must complete in order to exhaust administrative remedies. See, e.g., Moore, 517 F.3d at 721 (describing the DPS administrative remedy procedure); (see also Defs' Mem. (DE 34) at 3-4). Here, plaintiff submitted a grievance concerning the Eid al Fitr feast on July 18, 2016, which was assigned grievance number 4110-2016-ADM-00437. (DE 35-4 at 15, 21). DPS issued its step 2 response on August 1, 2016, which found the step one response adequately addressed plaintiff's concerns. (Id. at 21). Plaintiff signed the step 2 response, and checked the box indicating he agreed with the step two response. (Id.). Defendants have no records of plaintiff pursuing a step three appeal with respect to his

---

[2] Defendants do not raise their exhaustion defense with respect to plaintiff's claims regarding observance of Ramadan and the Night of Power.

complaints about the Eid al Fitr feast. (Bundy Aff. (DE 34) ¶ 9). And where plaintiff failed to respond to the instant motion, he has not established a triable issue of fact on defendants' exhaustion defense. The court therefore grants defendants' motion for summary judgment with respect to the Eid al Fitr claims.

    2.    Ramadan and Night of Power Observance Claims

Plaintiff also alleges defendants forced him to observe Ramadan and the Night of Power on incorrect dates. Although plaintiff did not identify any legal theories in his complaint, the court liberally construes plaintiff's allegations as alleging claims for relief under RLUIPA and the First Amendment.

In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA, however, does not provide for a private cause of action for damages against prison officials in either their official or individual capacities. See Sossamon v. Texas, 563 U.S. 277, 285-86 (2011) (official capacity claims); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) (individual capacity claims); see also Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014). Plaintiff therefore may only seek injunctive relief under RLUIPA. Wall, 741 F.3d at 496 n.5.

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive or declaratory relief with respect to his incarceration there." Rendelman, 569 F.3d at

186–87; Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). As set forth above, plaintiff was released from custody on September 11, 2016. (Bundy Aff. (DE 35-4) ¶ 10). Accordingly, to the extent plaintiff seeks injunctive relief under RLUIPA, the claim is moot. See Rendelman, 569 F.3d at 186-87 (dismissing RLUIPA claims seeking injunctive relief as moot after plaintiff transferred from state to federal prison). The court therefore grants defendants' motion for summary judgment as to plaintiff's RLUIPA claim concerning Ramadan and the Night of Power.

Plaintiff also arguably brings a claim for damages under the First Amendment. In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Sims v. Labowitz, 885 F.3d 254, 260 (4th Cir. 2018). In other words, a government official is entitled to qualified immunity when the plaintiff has not demonstrated a violation of a constitutional right, or the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).

The Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To establish a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a

8

First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89–91 (1987).

Plaintiff's First Amendment claim also requires proof that defendants' intentionally violated his free exercise rights. See Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir.2006) (explaining only intentional conduct is actionable under the Free Exercise Clause). Thus, "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." Id.

Plaintiff has failed to establish a triable issue of fact on the intentional conduct element of his claim. As noted, plaintiff alleges defendants mistakenly set the official start date for 2016 Ramadan observance on June 6, 2016. (Compl. (DE 1) § IV). Plaintiff asserts Ramadan should have started on June 5, 2016, as required by the official Islamic calendar. (Id.). Plaintiff also alleges that defendants' failure to begin Ramadan on the correct date caused them to miscalculate the appropriate date for observance of the Night of Power and to end Ramadan a day early. (Id.).

Plaintiff argues defendants intentionally violated his rights because plaintiff informed them that Ramadan started on June 5, 2016, but they disregarded plaintiff's evidence and began Ramadan on June 6, 2016. In support of these contentions, plaintiff submitted the (unauthenticated) "official" Islamic calendar that he shared with prison officials. (Id. at 10). But plaintiff's calendar states only that Ramadan "begins" on June 6, 2016, the same date DPS started it. (Id.). Contrary to plaintiff's assertions, his calendar does not state the first day of fasting for Ramadan began on June 6, 2016, or that Ramadan started at sundown on June 5, 2016. (See id.). Plaintiff's calendar thus does not contradict defendants' determination that Ramadan began at sundown on June 6, 2016.

Even assuming, however, that plaintiff's interpretation of the Islamic calendar is correct,

9

defendants' decision to credit the DPS religious services' staff's interpretation of the calendar over plaintiff's does not establish they intentionally violated plaintiff's First Amendment rights. At most, plaintiff's evidence suggests a negligent failure to properly interpret the Islamic calendar, which is not sufficient to establish a First Amendment violation. See Lovelace, 472 F.3d at 196, 202 (affirming grant of summary judgment on intentional conduct element of RLUIPA and First Amendment claims where "while [defendants'] efforts to ensure accuracy ultimately proved inadequate . . . [such efforts] suggest only negligence, not intentional conduct with respect to [plaintiff's] religious exercise rights.").[3]

Plaintiff also brings his First Amendment claim against defendants in their official capacities. Official capacity claims are, in effect, claims against the governmental entity employing the defendant. See Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). Defendants are employed by the State of North Carolina, which is immune from plaintiff's First Amendment damages claims under the Eleventh Amendment. See Eldelman v. Jordan, 415 U.S. 651, 662-63 (1974).

In sum, plaintiff's evidence does not establish defendants violated his rights under the First Amendment, and plaintiff's RLUIPA claims are moot.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 32). The court DISMISSES without prejudice plaintiff's RLUIPA and First Amendment claims related to the 2016 Eid al Fitr observance. Plaintiff's First Amendment claims challenging the 2016

---

[3] Defendants also construed plaintiff's claim as asserting that DPS must accommodate plaintiff's interpretation of the Islamic calendar regardless of whether his interpretation corresponds to official Islamic doctrine. But even a broad reading of the complaint and attachments does not suggest plaintiff is asserting such a claim. Plaintiff submitted a Ramadan calendar from an official Islamic organization, and he repeatedly alleges DPS failed to calculate the correct official dates for 2016 Ramadan, as set forth in official doctrine. Plaintiff does not allege that DPS must accommodate an idiosyncratic interpretation of Islam.

DPS observance of Ramadan and the Night of Power are DISMISSED with prejudice. The court DIRECTS the clerk to close the case.

SO ORDERED, this the 24th day of September, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge